VORMELKER v OLEKSINSKI

Opinion of the Court

1. Insurance—Homeowner's Policy—Misrepresentation—Lien-holders.

A provision in a homeowner's insurance policy making it void if the *insured* has made a fraudulent misrepresentation is not applicable to a mortgagee or lienholder to whom the proceeds are payable in the absence of a similar provision applicable to the mortgagee or lienholder.

2. Insurance—Homeowner's Policy—Hidden Defects—Fraudulent Concealment—Lienholders.

Refusal to allow defendant insurer to present evidence of plain-tiffs' fraudulent concealment of hidden defects in the condition of their property, which had been grounds for rescission of plaintiffs' land contract with the vendee insured, was not reversible error where, without plaintiffs' knowledge, the real-tor who represented plaintiffs in the sale of the property, as part of his insurance business, had cancelled plaintiffs' home-owner's policy at the time the land contract was executed and had issued a new policy to the vendees in which plaintiffs, as lienholders, were named to receive the policy proceeds; plain-tiffs, who were not even aware of the second policy's existence, could hardly be guilty of fraud in its procurement.

3. Insurance—Similar Claim—Settlement—Evidence.

A settlement between defendant insurer and a homeowner in-sured some 20 miles from plaintiffs' house, on a house damage claim similar to plaintiffs', was properly admitted as evidence for purposes of interpreting a "collapse clause" of an insurance

References for Points in Headnotes

[1] 43 Am Jur 2d, Insurance § 765 *et seq.*
[2, 11] 43 Am Jur 2d, Insurance § 726 *et seq.*
[3, 5, 8–10] 43 Am Jur 2d, Insurance § 1440.
	What constitutes "collapse of a building" within coverage of prop-
	erty damage insurance policy, 72 ALR2d 1287.
[4] 43 Am Jur 2d, Insurance §§ 146–150.
[6, 7] 59 Am Jur 2d, Parties § 92 *et seq.*

contract in suit; it did not violate the rule that settlements and compromises are not to be considered as evidence because that rule applies only to the parties to a lawsuit, not to settlements between a party and a third person.

4. INSURANCE—REALTOR—AGENT OF OPPOSITE PARTY—CROSS-EXAMINA-
TION.

A realtor who was plaintiffs' agent in sale of their house to third parties, and who was also the agent of defendant insurer in selling a homeowner's policy to the third parties, was an agent of the defendant insurer and properly called as a witness for the purposes of cross-examination under the opposite party statute; the realtor's knowledge of the entire sales transaction, such as the condition of the property, and what had been disclosed about the property to the third parties at the time that the realtor, as defendant's agent, sold the insurance policy to the third parties was relevant since his knowledge would be imputed to defendant insurer.

5. INSURANCE—HOMEOWNER'S POLICY—COLLAPSE CLAUSE—EVIDENCE—
MATERIALITY.

Pictures of a damaged home owned by plaintiffs' neighbor, of pile drivings near the neighbor's home, and questioning of plaintiffs' neighbor regarding the damage to his home and of another witness about repairs which he made to plaintiffs' home, although not particularly probative of whether the "collapse clause" in plaintiffs' policy covered their damage caused by an inadequate foundation, did not, taken singly or collectively, prejudice or deny defendant insurer a fair trial.

6. PARTIES—JOINDER—PREJUDICE.

The propriety of joining a party as a third-party defendant in an action is irrelevant where the third party was granted a separate trial in which to litigate its liability.

7. INSURANCE—PARTIES—MISJOINDER.

Plaintiffs, who were lienholders under a homeowner's insurance policy, had a cause of action on the policy against defendant insurer; therefore, the propriety of plaintiffs' joinder of defendant insurer as a third-party defendant in an action by the insured against plaintiffs was immaterial, where defendant was granted a separate trial to litigate its liability.

8. INSURANCE—HOMEOWNER'S POLICY—COLLAPSE CLAUSE—DAMAGE—
PROXIMATE CAUSE.

Refusal to grant defendant insurer either a directed verdict or a judgment notwithstanding the verdict was not error where both

plaintiffs' and defendant's experts agreed that an inadequate foundation could have been at least one cause of the damage to plaintiffs' home, thus raising the question whether the proximate cause of plaintiffs' damage was an inadequate foundation, which would entitle plaintiffs to recover, or earth movement, which the policy excluded.

9. INSURANCE—HOMEOWNER'S POLICY—COLLAPSE CLAUSE—DEFINITIONS—INSTRUCTIONS TO JURY.

An instruction to the jury defining "collapse", as used in a policy insuring homeowners against collapse of their home, as a sinking, bulging, cracking, or pulling away of the wall so as to impair its function of supporting the house's superstructure and destroying its efficiency as a habitation, was proper; the insureds, in order to recover, were not required to show that their house was a total loss.

10. INSURANCE—HOMEOWNER'S POLICY—COLLAPSE CLAUSE—PROXIMATE CAUSE.

Policy exclusion of losses to a home caused by "earthquake, landslide or other earth movement" is applicable only when it can be shown that the insured's loss was caused by "earthquake, landslide or other earth movement"; if the insured building was improperly constructed, considering the type of soil or the geography of the area, and "but for" the inadequate construction the building would not have collapsed even with the earth movement, then the damage comes under the policy protection, since one of the primary purposes of such an insurance policy is to protect against faulty workmanship or planning.

DISSENT BY DANHOF, P. J.

11. INSURANCE—HOMEOWNER'S POLICY—MISREPRESENTATION—PRINCIPAL AND AGENT.

*Land contract vendees were agents of plaintiff vendors for the purpose of procuring homeowner's insurance protecting the lienholder vendors, and where plaintiff vendors had misrepresented the condition of the property to the vendees who, in obtaining the insurance, innocently passed this material misrepresentation along, the plaintiff vendors could be held to have committed a fraud; therefore the trial court erred in refusing to allow defendant insurer to introduce proof on the issue of fraud.*

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 January 10, 1972, at Lansing. (Docket No. 10457.) Decided May 24, 1972. Leave to appeal denied, 388 Mich 791.

Third-party complaint by Vernon Z. Oleksinski and Helen Oleksinski against Insurance Company of North America on a homeowner's insurance policy issued to Howard Vormelker and Hazel Vormelker, land contract vendees of plaintiffs. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Riseman, Lemke & Piotrowski,* for plaintiffs.

*Touma, Watson & Andresen (David C. Nicholson,* of counsel), for defendant.

Before: DANHOF, P. J., and T. M. BURNS and O'HARA,* JJ.

T. M. BURNS, J. This cause arises out of damages occurring to a house owned by defendants-third-party plaintiffs-appellees (hereinafter referred to as plaintiffs). The plaintiffs had previously sold the house in question to the Vormelkers who sued plaintiffs and obtained a judgment of rescission. That decision was appealed to this Court and was affirmed. See *Vormelker v Oleksinski,* 32 Mich App 498 (1971). The complicated fact situation was accurately and logically set forth in that opinion and will be used here to present the factual background.

"In 1957 the (plaintiffs) Oleksinskis engaged one Russell Secor, a contractor with extensive experience in home building in the St. Clair-Marysville area near the site of the premises here involved. Mr. Secor did not

_____

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

draw the plans. They were furnished him by (plaintiffs) who obtained them from another source.

"Mr. Secor, on the basis of his prior experience, advised the (plaintiffs) that there was 'a series of unstable strata of soils extending to 120 feet below the surface' on the proposed site of the home. He described the effect of this condition as causing 'large masses of land [to] tend to move at infrequent intervals.'

"The (plaintiffs) apparently decided to build on the site they had chosen, irrespective of Mr. Secor's warning, and the home was completed in 1957 at a cost of some $27,000. Shortly thereafter, the testimony disclosed, the property was listed for sale and remained so listed until it was sold to (the Vormelkers) in 1966.

"(The Vormelkers) took possession of the property and moved in. Shortly thereafter evidence of latent defects appeared. They were of a very serious nature. Ultimately the premises, according to the (defendants') claim, became uninhabitable. As the defects became apparent, (defendants) learned that what (the plaintiffs) had characterized as some 'minor' or 'temporary' repairs having been made, were in reality basic major repairs necessitated by the shifting of the land base under the home.

"The trial judge found adequate grounds for rescission and the money judgment asked by (Vormelkers). He granted separate trials as to the two impleaded realtors, and to the insurance carrier."

Subsequent to the trial in the above case, and while that matter was on appeal, the instant case was heard by the court sitting with a jury. The basis of the suit was that defendant was liable for the damage done to the house under a policy of insurance which the realtor, Gerald Emig, as part of his insurance business, sold to the Vormelkers at the time they purchased plaintiffs' house. The policy named the plaintiffs as the lienholders thereby entitling them to the benefits provided for by the policy.

The policy of insurance covered losses resulting

from the collapse of the building or any part of it but excluded losses covered by earthquake, landslide or other earth movement.

Expert witnesses were presented who apparently agreed that a cause of the damage to the home was a form of earth movement. However, these witnesses also indicated that the earth movement wouldn't have damaged the property if it would have had a foundation built on piles rather than a spread foundation.

At the close of the trial, the jury returned a verdict in favor of the plaintiffs, Oleksinskis, against the defendant. Defendant's motions for a judgment *non obstante veredicto* and a new trial were denied. Defendant then brought this appeal raising seven issues, which we will discuss in the order presented.

1. *Whether the trial court committed reversible error in refusing to allow the defendant to present evidence of plaintiffs' fraudulent concealment of hidden defects as a defense to an action on the insurance contract?*

In the Vormelkers' suit[1] for rescission, it was determined that the Oleksinskis had fraudulently misrepresented the condition of the property and the land contract between those parties was rescinded. In the instant case defendant attempted to introduce evidence to prove that the plaintiffs had committed fraud. It is defendant's position that if the Oleksinskis had not committed fraud upon the Vormelkers, the Vormelkers would have disclosed the true condition of the property to the insurance company and the policy would not have

---

[1] See *Vormelker v Oleksinski,* 32 Mich App 498 (1971).

been issued. Defendant further contends that as the situation now stands plaintiffs are being allowed to profit from their own fraud.

The policy of insurance provides that it shall be void if the insured makes a fraudulent misrepresentation:

"This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in the case of any fraud or false swearing by the insured relating thereto."

However, there is no similar provision applying to the mortgagee. Therefore, since the proceeds of the policy were payable to the mortgagee or, as here, the lienholder, there was created a separate contract between the insured and the mortgagee who is not subject to most of the defenses available to the insured against the mortgagor. *Citizens State Bank of Clare v State Mutual Rodded Fire Ins Co of Michigan,* 276 Mich 62, 67 (1936).

Although we have not been able to locate any authority to guide us, it is apparent that there was no intent on the part of the plaintiffs to defraud the defendant either directly or through the Vormelkers. At the time the land contract was executed, the plaintiffs had a homeowners policy on the property. Normally such policies are merely transferred to the vendees. Here, however, unbeknownst to plaintiffs, Mr. Emig, the realtor, as part of his insurance business, cancelled that policy and issued the present one to the Vormelkers. Therefore, since plaintiffs were not even aware of the policy's existence, they could hardly be guilty of fraud in its procurement. Accordingly, we hold

that the trial judge's ruling excluding evidence of fraud was correct.

2. *Whether the lower court committed reversible error in allowing plaintiffs to introduce into evidence a settlement between the defendant and a third party on a similar policy of insurance involving a similar claim?*

During the trial plaintiffs, on cross-examination, were allowed to question Mr. Richard M. Jay, an insurance adjustor employed by the defendant, about a settlement by defendant with the owner of a home some 20 miles from the plaintiffs' home. Defendant objected to this testimony on the grounds that it was irrelevant, highly prejudicial, and in violation of the accepted practice that settlements and compromises are not to be considered as evidence.

It is clear that offers to settle between the parties to the lawsuit are not admissible. *Luce v Stott Realty Co,* 201 Mich 587 (1918). Here, however, we are concerned with a settlement between the defendant and a third party. There appears to be no good reason to exclude such evidence provided, of course, it is relevant and material.

"Evidence of other contractual transactions between the same parties is readily received when relevant to show the probable meaning they attached to the terms of the contract in litigation. Likewise, when the authority of an agent is in question, other similar transactions carried on by him in behalf of the alleged principal are freely admitted.

"However, when evidence of other contracts is offered as evidence on the issue of the terms or making of the contract in suit, the courts have shown a surprisingly stiff attitude, beguiled perhaps by the mystical influence of the *res inter alios acta* phrase or misled by a confu-

sion of the requirements of sufficiency and relevancy. When the evidence offered is of other contracts between the same parties, they have been willing to acknowledge that other similar contracts showing a custom, habit or continuing course of dealing between the same parties may be received as evidence of the terms of the present bargain. Many courts, however, draw a line here and hold that a party's other contracts with third persons offered as evidence of the terms of the disputed contract are inadmissible.

"This is too inflexible and bars out information valuable to the trier. Contracts of a party with third persons may show the party's customary practice and course of dealing and thus be highly probative as bearing on the terms of his present agreement. Even short of such extensive acts, when a business man has once adopted a particular mode of handling a bargaining topic, such as warranty, discount or the like, in a certain kind of transactions it is often easier for him to follow the same solution in respect to the same feature of a new contract, than it is to work out a new one.

"No strict rules or limits of admissibility are appropriate. There is no danger of unfair prejudice here. Seemingly, the courts should admit the evidence of other contracts in all cases where the testimony as to the terms of the present bargain is conflicting, and where the judge in his discretion finds that the probative value of the other transactions outweighs the risk of waste of time and confusion of issues." McCormick, *Evidence,* § 165, pp 346–348.

In the instant case it was not clear just what the "collapse clause" contained in the insurance contract covered. Plaintiffs were arguing that damage due to an inadequate foundation was covered. Therefore, they presented evidence that defendant had settled a claim with another party under a similar policy for damage caused by an inadequate foundation. It is our opinion that such evidence was relevant for purposes of interpreting what the "collapse clause" meant. We therefore hold that

the trial court was correct in admitting the evidence.

3. *Whether the trial court erred in allowing plaintiffs to call Gerald Emig and cross-examine him as an agent of the defendant?*

Gerald Emig was the realtor and agent for plaintiffs in the sale of the house to the Vormelkers. However, Emig was also the agent of the defendant who sold the insurance policy to the Vormelkers. Plaintiffs therefore called him as a witness for purposes of cross-examination under MCLA 600.2161; MSA 27A.2161.

It is defendant's position that since Emig was the agent of both parties, the court should not have allowed him to be cross-examined concerning the sale of the property and the disclosures that had been made to the Vormelkers.

It is clear to us that the rule of the trial court was correct. The knowledge Emig had of the entire transaction of sale, *i.e.,* the condition of the property, what had been disclosed to the Vormelkers, *et cetera,* at the time he, as agent for defendant, sold the insurance policy to the Vormelkers is obviously relevant since all of that knowledge would be imputed to the defendant. We therefore find no error in allowing plaintiffs to call the witness under the statute for purposes of cross-examination.

4. *Whether the trial court committed reversible error by overruling several of defendant's objections to irrelevancy or materiality of the evidence offered by the plaintiffs?*

Defendant here maintains that on numerous occasions, over objection, plaintiffs were allowed to

delve into areas irrelevant to the controversy in issue. It is defendant's position that even though each instance, taken individually, might not constitute reversible error, when they are taken as a whole it becomes clear that the court was prejudiced against the defendant.

Defendant first objects to the introduction of some pictures of a damaged home owned by a Mr. Peron near the plaintiffs and to the questioning of witness Peron concerning the damage.

Plaintiffs also introduced pictures of some pile drivings near Peron's home and questioned a Mr. Davis about repairs done to plaintiffs' home. Defendant was not allowed to show that the repairs done to plaintiffs' home were intended to be only temporary although it did call a witness who testified that he was a friend of the plaintiffs and that they had told him that Mr. Davis had wanted to move the home rather than repair it and that Davis had told plaintiffs that he could not guarantee his work.

While we agree that the evidence complained of was not particularly probative of the issues involved, it is our opinion that defendant was not prejudiced by its admission. Neither the instances taken singly nor collectively show any prejudice on the part of the court against defendant. Defendant was not deprived of a fair trial.

5. *Whether the lower court committed reversible error in denying the defendant's motion for summary judgment when plaintiffs attempted to join defendant as a third party in a prior lawsuit?*

In the original action of *Vormelker v Oleksinski, supra,* the Oleksinskis attempted to bring in de-

fendant insurance company as a third-party defendant. Defendant was, however, granted a separate trial, the subject matter of which is presently before this Court. Defendant now contends that it was improperly joined as a third-party defendant in that GCR 1963, 204 and 205 do not apply to the facts in this case; and, therefore, defendant should have been granted a summary judgment.

Without deciding whether or not defendant was improperly joined, we fail to see how defendant was prejudiced thereby since it was granted a separate trial where the question of any liability on its part could be litigated. Therefore, any question of proper joinder is no longer relevant.

It is clear that plaintiffs were lienholders under the contract of insurance and therefore had a cause of action against the defendant. Therefore, whether or not plaintiffs improperly attempted to join the defendant in the prior action, the instant case was properly before the court. We find no merit in this issue.

6. *Whether the lower court erred in denying defendant's motions for a directed verdict and for a judgment n.o.v.?*

The "collapse clause" of the insurance policy excluded losses caused by earth movement. Defendant contends that all of the competent testimony indicated that the cause of the damage to plaintiffs' home was earth movement and, therefore, a directed verdict or a judgment n.o.v. should have been granted.

Both plaintiffs' and defendant's experts agreed that an inadequate foundation could have been at least one cause of the damage to plaintiffs' home. Therefore, there is a question of what the proxi-

mate cause of the damage was: the earth move-
ment or the inadequate foundation. Under these
circumstances, the trial court was correct in refus-
ing to grant either a directed verdict or a judg-
ment n.o.v.

7. *Whether the trial court's instructions concern-*
   *ing the definition of the word "collapse" as it*
   *was used in the policy and the court's instruc-*
   *tions explaining proximate cause were erro-*
   *neous?*

In the case at bar the trial court defined the
word "collapse" as follows:

"Collapse, as used in this policy, means a sinking,
bulging, cracking, pulling away of the wall so as to
impair its function of supporting the superstructure
and destroying its efficiency as a habitation."

Defendant requested a definition which would
more or less require the destruction of the whole
building. Thus, under the trial court's instruction,
plaintiffs could recover for a "collapse" under the
policy without having to show that the house was
a total loss. Defendant contends this is error.

There is a conflict of authority over what the
definition of a collapse should be:

"A home did not 'collapse' within the meaning of an
insurance policy covering direct loss from a collapse of
the building or any part thereof, it was held in *Central
Mutual Insurance Co v Royal* (1959), 269 Ala 372; 113
So 2d 680; 72 ALR 2d 1283, where there was evidence
that the walls and the concrete foundation of the in-
sured house had cracked, and segments of the wall had
sunk or dropped, but there was no evidence that the
house had fallen down or caved in. The court, after
pointing out that the word 'collapse' or the term 'col-
lapse of a building' was plain and clear and without

ambiguity, and meant that the entire building must lose its distinctive character as a building, stated that where the language of an insurance policy was clear and unambiguous it must be construed as it read, and that courts were not at liberty to raise doubts where none existed or to make a new contract for the parties. The court concluded by expressing the opinion that where some of the walls of a house appeared to have cracks in them, and in two or more places the concrete footing contained cracks, but there was no falling in or loss of shape, no reduction to a flattened form or rubble of the building or any part thereof, there was no collapse of the building within the meaning of the policy.

\* \* \*

"However, in *Travelers Fire Insurance Co v Whaley* (1959), CA 10, Kan) 272 F2d 288, applying Kansas law, where there was no claim that the building or any part thereof collapsed in the sense that it tumbled down or fell in a heap, but the court found that the basement walls cracked and broke on the west, north, and south walls of the residence, that this cracking withdrew the support necessary for the first floor and caused damage to the ceiling, rafters, and upper walls of the first floor resulting in material damage to the structure, that a portion of the residence had fallen, impairing the substantial integrity of the building to such an extent as to render it unsuitable for use as a home, and that the building was exposed to the inclemency of the weather and its contents were more easily subject to the elements, it was held that there was a recoverable loss under a fire policy insuring against a collapse of the building or any part thereof. The court construed the word 'collapse' in the context in which it was used by the parties in executing the insurance contract, and took the view that the parties did not intend coverage only where there was a complete collapse and tumbling down of the foundation wall, so as to cause the superstructure to come crashing down in a heap of rubble, but rather that there was a partial collapse within the meaning of the policy if the foundation disintegrated by settling, pulling away, or cracking so that it would no

longer support the house. The court also applied the
rule that where a contract of insurance prepared by the
company contained a word susceptible of being con-
strued, without violence, as having more than one
meaning, the meaning most favorable to the interests of
the insured, and most unfavorable to the insurer, must
be adopted." 72 ALR 2d 1288–1289.

It is our opinion that the latter approach is the
better view. It therefore follows that we find no
error in the trial court's instruction.

Defendant requested the following instruction
regarding proximate cause:

"You may, in this case, find that there was more than
one proximate cause of the damage sustained by the
Oleksinski home. Accordingly, if you find that there
was a collapse, you may find that earth movement was
the proximate cause or one of the proximate causes
even though it need not be the only cause or last
cause."

The trial court instructed the jury, however, that
if they found that earth movement was the *sole*
proximate cause of the collapse, they should then
return a verdict of no cause for action.

It is defendant's position that earth movement
could never be the sole cause of a collapse and the
effect of the trial court's instruction is to render
the policy illusory.

We disagree. The policy provided for coverage
for the collapse of the building, but excluded loss
by "earthquake, landslide or other earth move-
ment".

All of the experts agreed that earth movement
caused the damage to the house, but there was
also expert testimony that the foundation to the
house was inadequate and that had the foundation
been adequately constructed, the collapse would
not have occurred.

It is our opinion that the exclusions contained in

the policy apply only when it can be shown that earth movement *et cetera* was the sole cause of the damage. If it can be shown that the building was improperly constructed (taking into consideration the type of soil, the geography of the area *et cetera)* and "but for" the inadequate construction the building would not have collapsed even with the earth movement, then the damage should come under the protection of the policy. One of the primary purposes of a policy such as this is to protect against faulty workmanship or planning. It is, therefore, our opinion that the instruction of the trial court was correct.

Affirmed. Costs to appellees.

O'HARA, J., concurred.

DANHOF, P. J. *(dissenting).* I must dissent because I believe the trial court erred in refusing to allow proof on the issue of fraud.

The land contract[1] between the Vormelkers and the Oleksinskis provided that the Vormelkers would "keep the building now or hereafter on the premises insured against loss and damage in a manner and to an amount approved by the seller and to deliver the policies as issued to the seller with the premiums fully paid". As I view the case the Vormelkers became the agents of the Oleksinskis for the purpose of procuring insurance.

I think it clear that if a principal misrepresents to his agent and the agent, while acting as an agent, passes this misrepresentation along, the principal may be guilty of fraud. Thus, if the Vormelkers, even though acting innocently, misrepresented a material fact that had been misrepresented to them by the Oleksinskis, the Oleksinskis could be held to have committed a fraud.

I would reverse and remand for a new trial.

---

[1] See *Vormelker v Oleksinski,* 32 Mich App 498 (1971) for detailed discussion of judgment of recision of the contract.