DAGEN v HASTINGS MUTUAL INSURANCE COMPANY

Docket No. 93674. Submitted June 23, 1987, at Grand Rapids. Decided November 20, 1987. Leave to appeal applied for.

Bette Dagen purchased a homeowner's policy from Hastings Mutual Insurance Company insuring her home from December 18, 1983, to December 18, 1984, against, among other things, collapse, but not including cracking, shrinking, bulging or expansion. In the summer of 1984 Dagen discovered that the floor joists, mud sill, block sill, rim joists and subflooring were rotted, making the structure unsound, but that the damage was repairable. Dagen made a claim against Hastings Mutual and another for the cost of repairs and, when the claim was denied, brought an action against Hastings, alleging breach of contract in denying coverage for plaintiff's claim for collapse. The Ottawa Circuit Court, Calvin L. Bosman, J., granted summary disposition for Hastings Mutual. Plaintiff appealed.

The Court of Appeals held:

It was a reasonable inference from the evidence that the supporting structure was so impaired as to destroy the efficiency of plaintiff's home as a habitation, thus raising a genuine issue of material fact as to whether the home "collapsed" within the meaning of the homeowner's policy.

Reversed.

*Persinger & Farmer, P.C.* (by *Floyd M. Farmer, Jr.*), for plaintiff.

Before: WAHLS, P.J., and R. M. MAHER and T. K. BOYLE,* JJ.

PER CURIAM. Plaintiff appeals as of right from the August 1, 1986, order of the Ottawa Circuit Court granting summary disposition pursuant to MCR 2.116(C)(8) and (10) on plaintiff's claim for

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

breach of contract and from the circuit court's June 12, 1986, order denying plaintiff's motion to amend her pleadings.

On December 18, 1983, Hastings Mutual issued a homeowner's insurance policy to plaintiff for the period of December 18, 1983, to December 18, 1984. Paragraph thirteen of the policy insured plaintiff's dwelling against the peril of

> [c]ollapse of buildings or any part thereof, but collapse does not include cracking, shrinkage, bulging or expansion.

Plaintiff's home was built in 1970. In the summer of 1984, plaintiff hired a plumber to connect her home to the city water system. The plumbers told plaintiff that her house was ready to fall down. Plaintiff called her insurance agent, who recommended that the house be inspected by a residential contractor. Upon inspection, the contractor told plaintiff that her floor joists were badly rotted and the house was buckling on the outside.

Plaintiff's homeowner's policy was renewed on December 18, 1984. The renewed policy contained an amendatory endorsement ostensibly supplementing plaintiff's coverage to include "collapse" of her dwelling due to "hidden decay." However, the amendatory endorsement added exclusions for any loss to plaintiff's dwelling due to:

> Faulty, inadequate or defective:
> a) planning, zoning, development, surveying, siting;
> b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> c) materials used in repair, construction, renovation or remodeling; or
> d) maintenance;

of part or all of any property whether on or off the residence premises.

Some time after the renewal of her policy, plaintiff made a claim with Hastings for the repairs on her home. Hastings denied the claim. It asserted that the home had a latent defect caused by the builder's failure to install vapor barriers beneath the crawl space. According to Hastings, the policy excluded coverage for latent defects and wet or dry rot.[1] Hastings also asserted that the house had not "collapsed" and was therefore not covered under paragraph thirteen of the policy.

On May 13, 1985, plaintiff filed suit against Hastings.[2] Plaintiff alleged, inter alia, that defendant had breached the contract of insurance by denying coverage under paragraph thirteen.[3] Defendant answered by denying that there had been a collapse within the meaning of paragraph thirteen of the policy. On March 24, 1986, Hastings moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), alleging that plaintiff had failed to plead a collapse within the meaning of the policy and had failed to raise a genuine issue of material fact on the same issue.

[1] Those portions of the policy filed with plaintiff's complaint and available on appeal do not specify this exclusion. Our opinion therefore addresses only the issue of collapse, which was the basis for the trial court's order of summary judgment. Since Hastings has not filed a brief on appeal, we decline to address any alternative ground which might support the trial court's order.

[2] Plaintiff also sued Walter Warnke, the builder of her home. That suit apparently proceeded to trial and resulted in a judgment for plaintiff. However, the judgment has not been appealed and Warnke is not a party to the present appeal.

[3] Plaintiff also alleged that Hastings had engaged in an unfair, unconscionable and deceptive method, act or practice in violation of the Michigan Consumer Protection Act, MCL 445.901 et seq.; MSA 19.418 et seq. However, plaintiff has conceded at oral argument that there was no violation of the MCPA, citing Kekel v Allstate Ins Co, 144 Mich App 379; 375 NW2d 455 (1985), lv den 424 Mich 878 (1986). Thus, we decline to address the matter further in this appeal.

Plaintiff responded with the deposition testimony of Louis Goodin. Goodin was an expert contractor who had inspected plaintiff's home in February of 1985. According to Goodin, the floors of plaintiff's home were severely sagging. The lower structural members of the home, including floor joists, mud sill, block sill, and rim joists, were very badly rotted. To a lesser extent, the subflooring itself was rotting. Goodin found some places in which the wood was so rotted that he could tear it away with his hands. In other places, the subflooring was actually holding up the joists, rather than the joists holding up the subflooring. Goodin concluded that the house had very significant structural defects and was unsound. As a result of the structural defects, the doors and windows of the house were not working properly. Goodin attributed the problem to wet rot caused by a high water table. He believed that the problem could have been alleviated by the installation of a moisture barrier and ventilation. Goodin estimated the cost of repairs at $13,990, but believed that unforeseen difficulties could add as much as $10,000 to that estimate.

The trial court held that Goodin's deposition failed to raise a genuine issue of material fact and that plaintiff had merely pled that her dwelling was "in danger of collapse." The trial court thereupon granted summary disposition pursuant to MCR 2.116(C)(8) and (10). Plaintiff later moved for reconsideration and, alternatively, for leave to amend her complaint to specifically plead a collapse of the dwelling. The trial court denied both motions, apparently reasoning that, even if plaintiff had properly pled a collapse of the dwelling, she had failed to establish a genuine issue of fact through the deposition of Goodin and that amend-

ment of plaintiff's pleadings would therefore be futile.

On appeal, plaintiff argues that the deposition testimony of Goodin was sufficient to raise a factual issue regarding the collapse of her home and that the trial court erred by granting summary disposition pursuant to MCR 2.116(C)(10). Plaintiff does not contend that her pleadings were sufficient or that the trial court erred by initially granting summary disposition pursuant to MCR 2.116(C)(8). However, plaintiff does argue that an amendment of her pleadings specifically alleging collapse would not have been futile and that the trial court therefore erred by denying her motion for leave to file an amended complaint.

Our standard of review on motions for summary disposition pursuant to MCR 2.116(C)(10) is well-established:

> Summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), is proper only if there is no genuine issue as to any material fact and the party in whose favor judgment is granted is entitled to judgment as a matter of law. A motion based on GCR 1963, 117.2(3) is designed to test the factual support for a claim. *Maccabees Mutual Life Ins Co v Dep't of Treasury,* 122 Mich App 660, 663; 332 NW2d 561 (1983), lv den 417 Mich 1100.15 (1983). The court must consider the pleadings, affidavits, and other available evidence and be satisfied that the claim or position asserted cannot be supported by evidence at trial because of some deficiency which cannot be overcome. *Id.* The court must give the benefit of any reasonable doubt to the party opposing the motion and inferences are to be drawn in favor of that party. *Id.* [*Hagerl v Auto Club Group Ins Co,* 157 Mich App 684, 686-687; 403 NW2d 197 (1987).]

In *Vormelker v Oleksinski,* 40 Mich App 618;

199 NW2d 287 (1972), lv den 388 Mich 791 (1972), the plaintiffs also sought to recover under a homeowner's insurance policy for the collapse of their home. The word collapse was apparently not defined in the insurance policy and the trial court instructed the jury that

> "[c]ollapse, as used in this policy, means a sinking, bulging, cracking, pulling away of the wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation." [*Vormelker, supra,* p 630.]

On appeal, the defendant insurer challenged that jury instruction, arguing that the word collapse should include only instances in which the structure had caved in or fallen down. This Court rejected that argument and upheld the jury instruction provided by the trial court.

Here, as in *Vormelker,* the insurance policy does not contain a definition of collapse. However, the policy in this instance specifies that collapse does not include "settling, cracking, shrinkage, bulging or expansion." Reasoning that plaintiff's home was subject to settling floors and bulging walls, the trial court concluded that the damage was not covered under the policy and that a genuine issue of material fact had not been raised.

If the damage to plaintiff's home was limited to settling floors and bulging walls, we would be inclined to agree with the trial court's conclusion. However, the damage, according to the deposition testimony of Louis Goodin, is actually far more extensive. Goodin characterized the condition of plaintiff's home as "definitely" structurally unsound. He explained that one looking at the sagging floors and bulging walls alone could easily misunderstand the severity of the problem under-

neath the home. We believe that a reasonable inference, if not a direct conclusion, to be drawn from Goodin's testimony is that the supporting superstructure has been so impaired as to destroy the efficiency of plaintiff's home as a habitation. Thus, under *Hagerl* and *Vormelker,* we believe that plaintiff has raised a genuine issue of material fact in support of her assertion that her home has "collapsed" within the meaning of her homeowner's policy. Summary disposition was improperly granted under MCR 2.116(C)(10).

It naturally follows that an amendment of plaintiff's pleading to more specifically allege a collapse of her home would not have been futile. Under Michigan's liberal rule of amended pleading, MCR 2.118(A), leave must be freely given when justice so requires. See *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973). Given that a factual basis for plaintiff's claim has been established, we believe that justice requires that leave be granted.

We are not unmindful of the language of the amendatory endorsement added December 18, 1984, which might have the effect of excluding collapse resulting from faulty planning, design, construction or materials.[4] However, it is by no means clear that the collapse occurred within the term of the amendatory endorsement. We therefore conclude that an issue of fact remains as to whether the amendatory endorsement, supplemental coverages and additional exclusions are applicable to plaintiff's claim.

The judgment of the circuit court is reversed and the matter is remanded for further proceedings consistent with this opinion.

---

[4] It appears from the special verdict form that the jury awarded damages against the builder of the home on the theory of negligence or breach of implied warranty. See note 2, *supra.*