SZLAPA v NATIONAL TRAVELERS LIFE COMPANY

1. INSURANCE—CONTRACTS—LIFE INSURANCE—APPLICATION FOR IN-
SURANCE—FALSE STATEMENTS—DIRECTED VERDICTS—EVIDENCE
—AGENTS—COMMISSIONS.

   False statements made in an application for life insurance which
   would have been rejected if the true facts were known will not
   result in the policy being held void *ab initio* as a matter of law,
   thus requiring a directed verdict for defendant, where plaintiffs
   have presented credible evidence to support jury evaluation of
   their theory that defendant's agents filled out the application
   form and, although given accurate information, supplied incor-
   rect responses in order to receive their commissions.

2. CONTRACTS—INSURANCE—APPLICATION FOR INSURANCE—FALSE
STATEMENTS—AGENTS—RISK—MATERALITY.

   An assertion by an insurance company that false responses in an
   insurance application completed by an agent and signed by the
   insured decedent materially affected the risk requires a jury
   determination as to whether the decedent made false answers
   in a material respect.

3. CONTRACTS—INSURANCE—FRAUD—MATERIAL MISREPRESENTATION—
BURDEN OF PROOF.

   An insurance company has the burden of proving its claim of
   fraud or material misrepresentation in order to avoid liability
   under a policy of insurance.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur 2d, Insurance §§ 1979, 2035.
   Insertion by insurer's agent in application of false answers to
   questions correctly answered by insured, or answers suggested by
   agent. 81 ALR 833 s. 148 ALR 507.
[2] 43 Am Jur 2d, Insurance §§ 447, 448.
   44 Am Jur 2d, Insurance § 2067.
[3] 44 Am Jur 2d, Insurance § 1962.
[4, 5] 44 Am Jur 2d, Insurance §§ 2062, 2080.
   Rights and remedies arising out of delay in passing upon applica-
   tion for insurance. 32 ALR2d 487.
[5] 44 Am Jur 2d, Insurance § 2060.

4. INSURANCE—CONTRACTS—LIFE INSURANCE APPLICATION—REJECTION
   —DELAY—UNREASONABLE DELAY—IMPLIED ACCEPTANCE.

Delay in accepting or rejecting a life insurance application together with retention of the premium even as to military personnel in time of war will give rise to a jury question of whether the delay was so unreasonable that it implied acceptance.

5. INSURANCE—CONTRACTS—LIFE INSURANCE APPLICATION—MATERIAL
   MISREPRESENTATION—DELAY—REASONABLENESS—INSTRUCTION
   TO JURY.

A policy for life insurance is void *ab initio* where a jury determines that the decedent was responsible for the inclusion of a material misrepresentation in the application, and no amount of delay, reasonable or unreasonable, on the part of the insurer in rejecting the application could give rise to a binding insurance contract; therefore, an instruction to the jury conditioning a verdict for an insurance company on a finding of reasonableness in the company delay in acting on an application for the insurance even if the application contained a material misrepresentation by the insured, was error.

Appeal from Jackson, John C. Dalton, J. Submitted Division 2 May 8, 1975, at Lansing. (Docket No. 20667.) Decided June 24, 1975.

Complaint by Violet M. Szlapa and Robert A. Szlapa as beneficiaries under a proposed policy of life insurance against National Travelers Life Company for damages for failure to pay the beneficiaries of the policy. Judgment for plaintiffs. Defendant appeals. Reversed and remanded.

*Navarre & Navarre,* for plaintiffs.

*Rosenburg, Painter, Stanton, Bullen & Nelson, P. C.,* for defendant.

Before: DANHOF, P. J., and J. H. GILLIS and R. M. MAHER, JJ.

DANHOF, P. J. Plaintiffs are the beneficiaries under a life insurance policy applied for by the

decedent, John F. Szlapa, III, with the defendant insurance corporation. Plaintiffs brought suit seeking damages in an amount equal to that of the face value of the proposed policy. The jury returned a verdict in favor of the plaintiffs in the amount of $10,000. Defendant corporation appeals, and we reverse.

John F. Szlapa, III, enlisted in the U. S. Navy while still in high school in 1968. He was stationed at the U. S. Naval Air Station at Atsugi, Japan, when agents of the defendant corporation solicited him to buy life insurance. On August 25, 1970, an application for life insurance was prepared by licensed agents of the defendant corporation, and signed by decedent. The initial amount of insurance applied for was $15,000. The premiums were to be paid by direct remittance from the Navy to the defendant corporation, and an "official receipt military" evidencing this arrangement and authorizing the deduction was signed by the decedent. The allotment was fully processed, and the amount of the premium was paid by the Navy for the months of October and November, 1970.

The application form included a checked response which indicated a negative answer to the question "[h]ave flights as a pilot, crew member or in any capacity involving duty · aboard aircraft while in flight, been made within the past five years, or are such flights contemplated"? The application also indicated that decedent was assigned to a "shore squadron" and that he had not received any special or advanced training.

However, military records introduced at trial established that on April 22, 1970, decedent had been recommended as a flight crew candidate in C-2A type aircraft. He completed his training on

June 6, 1970 and was designated a Line Plane Captain in C-2A aircraft on June 11, 1970. Decedent drew aviation pay as a crew member from July 1 to July 31, 1970; aviation pay as a non-crew member from August 1 to August 31, 1970; and aviation pay as a crew member from September 1 to October 31, 1970 and again from December 1 to December 15, 1970. At the time of his death on December 15, 1970, he was on duty as a Line Plane Captain in a C-2A aircraft which crashed off the USS Ranger in the Gulf of Tonkin.

When the application for insurance was received in the home office of the defendant corporation on September 9, 1970, an underwriter noticed the letter "A" in the symbol designating decedent's rank, which prompted him to initiate further inquiry before issuing the policy. Aviation questionnaire forms were sent to the agents in Japan on September 17, October 8, October 28, November 2, and again on November 23, 1970. No response to any of these requests for additional information was received at the defendant corporation's home office. Consequently, on November 17, 1970, a notice of rejection effective December 21 was sent to the agents. On December 28, 1970, the decedent was also sent a notice of rejection, along with a refund check for the premiums paid to date.

At trial, the head of the defendant's underwriting department testified that had the application form been accurately answered to reflect the true occupational status of the decedent, the application would have been immediately rejected. The defendant corporation followed a long-established policy of declining to insure military personnel engaged in any kind of aviation activity. The underwriter also testified that the maximum amount of insurance the corporation would issue

for the interim period between application and issuance of the policy was $10,000.

Defendant corporation's pretrial motion for summary judgment was denied. During trial, after the plaintiffs rested, the defendant moved for a directed verdict which was also denied. The jury returned its verdict, judgment was entered, and the defendant corporation filed a claim of appeal.

The first issue raised on appeal involves defendant corporation's assertion that the trial court erred by submitting this case to the jury. Defendant argues that the misrepresentation in the application is uncontroverted, that the application would have been rejected if the true facts were known and that therefore any interim insurance provision was void *ab initio* as a matter of law.

Had this been the extent of the plaintiffs' case, there might be some merit to the defendant's contention. However, the plaintiffs presented two distinct theories amply supported by credible evidence upon which recovery could be predicated. It was for the jury to evaluate the evidence and pass upon the validity of either or both theories.

Plaintiffs alleged that the defendant's agents filled out the application form and that, although given accurate information by the decedent, they supplied incorrect responses so that the defendant corporation would accept the application and they would receive their commissions. Testimony was presented tending to demonstrate that the form was not filled out in decedent's handwriting, and that only the signature was written by him. Allegations of this nature under facts similar to those present here have been held subject to jury evaluation. *Turner v Mutual Benefit Health & Accident Assoc,* 316 Mich 6; 24 NW2d 534 (1946).

More specifically, in *Bendford v National Life &*

*Accident Insurance Co,* 356 Mich 52, 60; 96 NW2d 113 (1959), the Supreme Court considered defendant's assertion that the false response in an insurance application, completed by an agent and signed by the decedent, materially affected the risk thereby entitling the company to a judgment as a matter of law. The Court concluded that the assertion presented a "jury question as to whether decedent made false answers in a material respect".

Where an insurance company claims fraud or material misrepresentation to avoid liability, it has the burden of proving its claim. And where the only participants in the transaction are the agents of the company who are not called to testify, the burden is very difficult to sustain. *Prudential Insurance Co of America v Cusick,* 369 Mich 269, 286–287; 120 NW2d 1 (1963). Furthermore, under these circumstances, the credibility of the witnesses and the content verity of the written application as bearing upon the question of material misrepresentation were for the triers of fact to determine. *Hughes v John Hancock Mutual Life Insurance Co,* 351 Mich 302, 308; 88 NW2d 557 (1958).

Plaintiffs also relied upon the theory that the defendant corporation delayed for an unreasonably long period of time in acting upon the application, and that as a result, the application was accepted by defendant's silence when under an obligation to act. Even as to military aviation personnel in time of war, delay in accepting or rejecting a life insurance application together with retention of the premium will give rise to "the question of whether or not there was such unreasonable delay on the part of the defendant or its agent as to imply acceptance [which] would be a question of fact for

the jury". *Wadsworth v New York Life Insurance Co*, 349 Mich 240, 254–256; 84 NW2d 513 (1957). See also *Gorham v Peerless Life Insurance Co*, 368 Mich 335; 118 NW2d 306 (1962). Therefore, we hold that the trial court did not err by denying defendant corporation's motions for judgment as a matter of law; but rather the trial court properly ruled that the disputed questions of fact should be submitted to the jury.

The second issue raised by the defendant corporation concerns the trial court's instructions to the jury. Defendant corporation maintains that the trial court committed reversible error by confusing the plaintiffs' two distinct theories of recovery in one instruction, and thereby misstating the applicable rules of law. With this contention we agree.

The trial court's charge to the jury included the following instruction immediately after the material misrepresentation statute, MCLA 500.2218; MSA 24.12218, was read to the jury:

"Jurors, I further instruct you that if you find that any material representations by the deceased were not true and that if the actual facts had been known to the defendant, that it would have rejected the application, then you must find in favor of the Defendant and return a verdict of No Cause of Action, unless you find that the Defendant delayed unreasonably in accepting or rejecting the application."

Defense counsel objected promptly and specifically to this instruction. The trial court noted the objection for the record, but declined to alter the instruction as given.

Where there has been a material misrepresentation in the application for a life insurance policy, the policy will be held to have been void *ab initio. Dedic v Prudential Insurance Company of Amer-*

*ica,* 14 Mich App 274; 165 NW2d 295 (1968). In the present case, had the jury determined that the decedent was responsible for the inclusion of a material misrepresentation in the application, any life insurance coverage, interim or otherwise, would be void *ab initio.* If the potential coverage were void, no amount of delay, reasonable or unreasonable, could give rise to a binding insurance contract. By conditioning a verdict for the defendant on a finding as to the reasonableness of the defendant's delay in acting on the application, even if the application contained a material misrepresentation, the trial court erred. The instruction incorrectly stated the law and tended to confuse the jury; thus, the instruction prejudiced the defendant. Therefore, we reverse the judgment in favor of the plaintiffs and remand for a new trial.

Reversed and remanded. Costs to abide the outcome.