SMITH v GLOBE LIFE INSURANCE COMPANY

Docket No. 177201. Submitted September 16, 1996, at Grand Rapids. Decided April 25, 1997, at 9:30 A.M.

Debra L. Smith, as personal representative of the estate of Robert A. Smith, deceased, brought an action in the Kent Circuit Court against Globe Life Insurance Company, alleging breach of contract and violation of the Michigan Consumer Protection Act after the defendant refused to pay credit life insurance benefits following Robert's death. The defendant moved for summary disposition, claiming no coverage existed because the decedent had misrepresented the state of his health at the time he applied for the insurance. The court, Donald A. Johnston, J., granted summary disposition for the defendant. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff failed to sustain her burden of proving that a genuine issue of material fact existed with respect to her challenge to the authenticity of the decedent's signature on the application for the insurance. The plaintiff did raise reasonable issues of fact regarding whether the slash marks through the "no" boxes answering the health questions on the application were made by the decedent and whether the defendant actually received the decedent's insurance application. Summary disposition with respect to these two issues was premature. The plaintiff's challenge to the defendant's assertion that it had relied on the insurance application in determining whether to insure the decedent fails because the plaintiff did not submit any documentary evidence to rebut the defendant's allegations to the contrary contained in an affidavit of a former underwriter for the defendant.

2. The trial court did not err in determining that the insurance application was not statutorily required to be attached to the certificate of insurance. The defendant's own contract did not require the defendant to attach a copy of the insurance application to the certificate of insurance. Therefore, the defendant's alleged failure to do so did not preclude the defendant from using any statements contained in the application against the plaintiff.

3. The plaintiff has a viable claim under the Michigan Consumer Protection Act (MCPA). Section 4(1)(a) of the act, MCL

445.904(1)(a); MSA 19.418(4)(1)(a), does not preclude her claim in light of the holding in *Attorney General v Diamond Mortgage Co*, 414 Mich 603 (1982), that § 4(1)(a) exempts from the MCPA's provisions a transaction or conduct that is "specifically authorized" but says nothing about transactions or conduct that is subject to regulation. The rationale in *Diamond* is based on a common-sense reading of the language of the statute that when the Legislature says "authorized," it does not mean "illegal acts." The trial court erred in not applying the *Diamond Mortgage* Court's interpretation of § 4(1)(a) in this case. The defendant was not entitled to summary disposition of the claim under the MCPA.

4. Section 4(2) of the MCPA, MCL 445.904(2); MSA 19.418(4)(2), must be interpreted to permit an individual's cause of action under § 11 of the MCPA, MCL 445.911; MSA 19.418(11), against an insurance company.

5. The interpretation of §§ 4(1)(a) and 4(2) of the MCPA in *Kekel v Allstate Ins Co*, 144 Mich App 379 (1985), fails to comport with the clear legislative intent of the MCPA or the Supreme Court's decision in *Diamond Mortgage, supra,* and must be rejected. Administrative Order No. 1996-4 does not require this panel of the Court of Appeals to follow *Kekel*.

Reversed and remanded.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — GENUINE ISSUE OF MATERIAL FACT.

   Speculation and conjecture are insufficient to raise a genuine issue of material fact (MCR 2.116[C][10]).

2. INSURANCE — ACTIONS — MISREPRESENTATION BY INSUREDS.

   An insurer seeking to avoid coverage for its insured on the basis of a claim that the insured made a misrepresentation has the burden of proving its claim and must demonstrate that the misrepresentation actually was made.

3. CONFLICT OF LAWS — INSURANCE — INSURANCE CODE — CREDIT INSURANCE ACT.

   Section 4434 of the Insurance Code and § 11 of the Credit Insurance Act do not conflict and may be construed harmoniously; the Credit Insurance Act, being the more recent and more specific statute, takes precedence (MCL 500.4434, 550.611; MSA 24.14434, 24.568[11]).

4. INSURANCE — CREDIT INSURANCE ACT.

   The Credit Insurance Act does not require that the application for insurance be attached to the certificate of insurance (MCL 550.611; MSA 24.568[11]).

5. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — EXEMPTIONS — SPE-CIFICALLY AUTHORIZED CONDUCT.

The Michigan Consumer Protection Act specifically exempts from its provisions a transaction or conduct "specifically authorized" under laws administered by a regulatory board or officer acting under statutory authority of the state or the United States; the act does not specifically exempt from its provisions transactions or conduct that is subject to regulation; "authorized" does not mean "illegal acts" (MCL 445.904[1][a]; MSA 19.418[4][1][a]).

6. CONSUMER PROTECTION — CONSUMER PROTECTION ACT — ACTIONS — INSUR-ANCE COMPANIES.

Section 11 of the Michigan Consumer Protection Act allows private actions to be brought against an insurance company under § 4(2) of the act (MCL 445.904[2], 445.911; MSA 19.418[4][2], 19.418[11]).

*Murray, Pawlowski & Flakne, L.L.P.* (by *Susan B. Flakne*), for the plaintiff.

*Honigman Miller Schwartz and Cohn* (by *John D. Pirich* and *Sandra L. Jasinski*), for the defendant.

Before: GRIBBS, P.J. and MARKEY and T. G. KAVANAGH*, JJ.

MARKEY, J. Plaintiff appeals as of right from an order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) and dismissing plaintiff's claim. We reverse and remand.

Debra L. Smith, as the personal representative of the estate of her father, Robert A. Smith, deceased, filed suit against defendant Globe Life Insurance Company after Globe refused to pay credit life insurance benefits following Robert A. Smith's death. Defendant claimed no coverage existed because the decedent misrepresented the state of his health at the time he applied for the credit life insurance policy.

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

In December 1992, the decedent was forty-seven years old and working full-time. On December 4, 1992, the decedent purchased a new vehicle. As part of the financing package he received from Ford Motor Credit Company (FMCC), he was offered and agreed to purchase a combined credit life and credit disability insurance policy issued by defendant. Only the credit life insurance policy, which provided in part that the insurance would pay off the balance due on the loan if the insured died during the policy's term, is at issue in this appeal.

The decedent made two payments on the FMCC loan before he unexpectedly died in January 1993 from a heart attack. After being appointed the personal representative of her father's estate, plaintiff notified defendant of the decedent's death and asserted a claim for benefits pursuant to the certificate of insurance. Defendant denied plaintiff's claim asserting that the decedent had misrepresented the state of his health when he applied for the policy. Thus, the policy was voided, and defendant rescinded the insurance coverages by refunding to the car dealership the premium that it had received on the decedent's behalf.

As a consequence of the denial, plaintiff filed a two-count complaint against defendant for breach of contract and for violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; MSA 19.418(1) *et seq.*

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), asserting that no genuine issue of a material fact existed as a matter of law because defendant would not have agreed to insure

the decedent if it had known the true state of the decedent's health at the time he applied for coverage.

On his application for the insurance, the decedent allegedly denied having been diagnosed with and treated for heart disease. The decedent's medical records, submitted in support of defendant's motion, showed that the decedent had been diagnosed with coronary artery disease in December 1986 for which he was still being treated at the time of his death. Furthermore, the decedent denied being a diabetic; however, in answers to interrogatories, plaintiff responded that the decedent was, in fact, an insulin-dependent diabetic.

In further support of its motion, defendant submitted an affidavit from a former underwriter for defendant who stated that if defendant had known the true state of the decedent's medical condition at the time he applied for coverage, defendant would not have issued its certificate of insurance to the decedent.

The certificate of insurance provides in relevant part:

> *WHAT WE WILL NOT PAY*:
> *Non-Eligible.* We will not pay any claim for benefits on insurance for which you or your Co-Debtor were not eligible. (See "WHO IS ELIGIBLE".) Such insurance never takes effect, but we will refund any premium paid for it. (See "REFUNDS".) . . .
>
> \* \* \*
>
> *WHAT THE CONTRACT IS AND HOW YOUR STATEMENTS AFFECT IT*:
> The attached Application for Insurance (if any) by you and any Co-Debtor, the Group Policy, and the Application for the Group Policy are the complete contract of insurance. All statements made in the Application for Insurance are considered to have been made to the best of the knowledge

and belief of you and any Co-Debtor. No statement can be used to void the insurance in effect or deny a claim under it, unless that statement is in the Application for Insurance. After two years from the Date in the Application, no statement made by you or any Co-Debtor in any Application can be used to void the insurance in effect or deny a claim under it unless that statement was made fraudulently.

The application for insurance contained a section inquiring about the applicant's health and, in bolder print, asked the applicant to "read carefully and check yes or no" regarding the following questions:

> 1. Have you been medically diagnosed as having *and* are you receiving treatment for:
> a. Any condition of the heart, brain, liver, kidney, lungs, cancer or any malignant growth?
> b. Diabetes, high blood pressure, circulatory disorders, neurological disorders, mental disorders or disorders of the back or neck?

Both the "no" boxes answering these two questions were checked. After the questions, just above the signature line, the application for insurance contained the following relevant provision:

> ANSWER ALL QUESTIONS HONESTLY AND TRUTHFULLY. MISREPRE-SENTATION IS A BASIS FOR DENIAL OF BENEFITS. ANY UNDERWRITING DECISION BASED ON THIS EVIDENCE OF INSURABILITY SHALL BE MADE WITHIN 60 DAYS FROM THE DATE OF THIS APPLICATION.

In rendering its decision in favor of defendant, the trial court agreed that *General American Life Ins Co v Wojciechowski*, 314 Mich 275; 22 NW2d 371 (1946), controlled. In *General American, id.* at 281, 284, our Supreme Court found that a material, false misrepresentation on an insurance application permitted an insurer to cancel the policy if the misrepresentation

materially affected the insurer's decision to accept the risk posed by the insured, and that the insurer was not statutorily obligated to attach a copy of the application to a group life insurance certificate. Here, the trial court concluded that the decedent had "not truthfully answered the [inquiries] in the application" because the decedent had had cardiac catheterizations performed, was taking medication prescribed for treatment of heart problems, and was an insulin-dependent diabetic. The court noted that although the parties agreed that the signature on the application appeared to be the decedent's, there did exist some question whether the decedent had marked the boxes in response to the health questions.

The trial court also granted summary disposition with respect to plaintiff's claim under the MCPA, finding this Court's decision in *Kekel v Allstate Ins Co*, 144 Mich App 379; 375 NW2d 455 (1985), to be controlling. Thus, the trial court granted defendant's motion for summary disposition with regard to both counts of plaintiff's complaint and dismissed the case. Arguing that the trial court improperly granted defendant's motion for summary disposition, plaintiff raises several points. We review a trial court's grant of summary disposition de novo to determine whether the defendant was entitled to judgment as a matter of law. *Borman v State Farm Fire & Casualty Co*, 198 Mich App 675, 678; 499 NW2d 419 (1993), aff'd 446 Mich 482; 521 NW2d 266 (1994). We believe that the trial court granted defendant's motion prematurely.

I

The Credit Insurance Act, MCL 550.601 *et seq.*; MSA 24.568(1) *et seq.*, governs credit life insurance; in MCL

550.609; MSA 24.568(9) it specifically makes credit life insurance subject to the provisions of other insurance statutes. Section 4434 of the Insurance Code, MCL 500.4434; MSA 24.14434, provides that the statements made by individuals in their application for any disability insurance policy, in the absence of fraud, are representations and not warranties. A second provision in the insurance contract section of the Insurance Code, MCL 500.2218(4); MSA 24.12218(4), addresses the effect of false statements in an application for an insurance contract:

> A misrepresentation that an applicant for life, accident or health insurance has not had previous medical treatment, consultation or observation, or has not had previous treatment or care in a hospital or other like institution, shall be deemed, for the purpose of determining its materiality, a misrepresentation that the applicant has not had the disease, ailment or other medical impairment for which such treatment or care was given or which was discovered by any licensed medical practitioner as a result of such consultation or observation.

Section 2218 has been applied to life insurance policies as well as disability policies. *Housour v Prudential Life Ins Co of America*, 1 Mich App 455, 459-460; 136 NW2d 689 (1965).

A

Plaintiff contends that, pursuant to § 2218, defendant failed to carry its burden of proof that requires an insurer to show that a material misrepresentation was, in fact, made and that the insurer relied on the misrepresentation. *Howard v Golden State Mutual Life Ins Co*, 60 Mich App 469, 477; 231 NW2d 655 (1975).

A motion for summary disposition tests the factual support for a claim to determine whether it can be resolved on an issue of law. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). The party moving for summary disposition must identify the areas in which there are no disputed facts and must support its position by affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(4) and (5); *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). The opposing party must then counter the motion through the use of evidentiary materials to demonstrate that a genuine issue of disputed fact does exist. *Skinner v Square D Co,* 445 Mich 153, 160; 516 NW2d 475 (1994).

Giving the benefit of reasonable doubt to the nonmovant, the court must determine whether a record might be developed that would result in an issue upon which reasonable minds could differ. *Farm Bureau Mutual Ins Co of Michigan v Stark,* 437 Mich 175, 184-185; 468 NW2d 498 (1991). All inferences are to be drawn in favor of the nonmoving party. *Dagen v Hastings Mutual Ins Co,* 166 Mich App 225, 229; 420 NW2d 111 (1987). Courts must be liberal in finding a genuine issue of material fact. *Meretta v Peach,* 195 Mich App 695, 697; 491 NW2d 278 (1992). Thus, before a judgment may be granted, the court must be satisfied that it is impossible for the claim or defense asserted to be supported by the evidence at trial because of some deficiency that cannot be overcome. *SSC Associates Ltd Partnership v General Retirement System of Detroit,* 192 Mich App 360, 365; 480 NW2d 275 (1991).

In the instant case, defendant supported its motion for summary disposition with a copy of the insurance

application that included marked answers to a health questionnaire, the decedent's purported signature, and an affidavit from Bernadine Sterker, a former underwriter for defendant, who swore that defendant would not have issued its certificate of insurance to the decedent if defendant had known the decedent's true medical condition. In turn, plaintiff averred in her affidavit that although the signature appeared to be her father's, the slash marks answering the health questions did not.

First, with respect to plaintiff's challenge to the authenticity of her father's signature on the insurance application, we believe that plaintiff has failed to sustain her burden of proving that a genuine issue of material fact exists. Her statement is simply that the signature *"may be my father's"* (emphasis added). Speculation and conjecture are insufficient to raise a genuine issue of material fact. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993).

On the other hand, plaintiff's unequivocal assertion in her affidavit that the slash marks through the "no" boxes of the application answering the health questions were not in her father's handwriting presents a different situation. The trial court, giving plaintiff as the nonmoving party the benefit of doubt regarding how she knows the decedent did not make those marks, should have concluded that that statement was beyond conjecture and speculation giving rise to a reasonable issue of fact regarding that point.

An insurance company has the burden of proving its claim of misrepresentation. *Szlapa v Nat'l Travelers Life Co*, 62 Mich App 320, 325; 233 NW2d 270 (1975). An insurer must demonstrate the misrepresen-

tation actually was made. *Howard, supra.* When the only participants in the transaction are the insurer's agents, and those agents are not called to testify, then the burden is very difficult to sustain. *Szlapa, supra,* citing *Prudential Ins Co of America v Cusick,* 369 Mich 269, 286-287; 120 NW2d 1 (1963).

Because defendant could have (a) obtained and submitted an affidavit from the person who handled the decedent's transaction providing details of that transaction, (b) obtained an affidavit from that person regarding the person's usual practices when taking insurance applications, or (c) produced affidavits showing the dealership's established practices for taking these insurance applications, but failed to do so, defendant failed to sustain its burden of proof. Thus, a genuine issue of material fact exists regarding whether the decedent himself checked the "no" boxes in answer to the health questions.

Ruling in favor of defendant with regard to this issue resolved a reasonable doubt against plaintiff contrary to the requirements of *Dagen, supra* at 229. Indeed, three possible situations existed in this particular case: (1) the decedent could have marked the boxes himself, (2) the decedent may have answered the questions orally while someone from the dealership asked the questions and completed the boxes and after which the decedent signed the bottom of the application, or (3) the decedent signed the application but did not mark the boxes, left the dealership, and later, when the omission was discovered, someone at the dealership filled in the boxes as shown in the application. If the last situation could be supported by evidence, then the decedent may not have misrepresented his medical condition.

Additionally, plaintiff argues that defendant never offered any evidence showing it actually received the decedent's insurance application, which was necessary to show that defendant in fact relied upon the decedent's application and that the information it contained was material to defendant's decision to accept the decedent as an insured. MCL 500.2218; MSA 24.12218.

Plaintiff is correct in her assertion that defendant did not allege that it received the decedent's application, and we note that the copy of the insurance application does not bear any mark indicating when defendant received or might have received the application. As a result, plaintiff raised a genuine issue of material fact pursuant to *Skinner, supra,* that made it inappropriate to grant summary disposition. *Radtke, supra.* Plaintiff's challenge to defendant's assertion that it relied on the insurance application in determining whether to insure the decedent fails, however, because she did not submit any documentary evidence to rebut defendant's allegations to the contrary as set forth in Bernadine Sterker's affidavit. As a result, Sterker's averments remain unrebutted, and plaintiff failed to satisfy her burden pursuant to *Skinner, supra.*

In summary, plaintiff raised a genuine issue of material fact concerning whether the decedent made or caused to be made the marks in the box describing the state of his health as shown in the insurance application and whether defendant actually received the decedent's insurance application. Thus, the trial court's grant of summary disposition with respect to these two facts was premature.

B

Plaintiff also asserts that the trial court erred as a matter of law in granting defendant's motion for summary disposition because defendant improperly asserted statements from the insurance application against plaintiff when defendant's own policy precluded it from doing so unless defendant attached a copy of the application to the certificate of insurance. We disagree.

Plaintiff erroneously relies on MCL 500.2218; MSA 24.12218. Again, the Credit Insurance Act, MCL 550.601 *et seq.*; MSA 24.568(1) *et seq.*, addresses credit life insurance and specifically provides in relevant part:

> Sec 10. The individual policy or group certificate of insurance shall be delivered to the insured debtor at the time the indebtedness is incurred except as hereinafter provided. [MCL 550.610; MSA 24.568(10).]
>
> Sec 11. If the individual policy or group certificate of insurance is not delivered to the debtor at the time the indebtedness is incurred, a copy of the application for such policy or a notice of proposed insurance, signed by the debtor and setting forth . . . a brief description of the coverage provided, shall be delivered to the debtor at the time such indebtedness is incurred. [MCL 550.611; MSA 24.568(11).]

The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc*, 182 Mich App 741, 744; 453 NW2d 301 (1990). If the plain and ordinary meaning of the statutory language is clear, then judi-

cial construction is neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). A court is required to enforce a clear and unambiguous statute as written. *Brown v JoJo-Ab, Inc*, 191 Mich App 208, 212; 477 NW2d 121 (1991).

The trial court held that pursuant to *General American, supra* at 284, the statute did not require defendant to attach a copy of the insurance application to the certificate of insurance. *General American, supra*, cited and quoted 1929 CL 12435, which statute remains essentially the same today in § 4434 of the Insurance Code, MCL 500.4434; MSA 24.14434.[1] Section 4434 of the Insurance Code and § 11 of the Credit Insurance Act, MCL 550.611; MSA 24.568(11), do not conflict, so they can be construed harmoniously, *Jennings v Southwood*, 446 Mich 125, 136-137; 521 NW2d 230 (1994). As the more recent and more specific statute, the Credit Insurance Act, 1958 PA 173, takes precedence over the Insurance Code. *Hill v Dep't of Treasury*, 202 Mich App 700, 704; 509 NW2d 905 (1993).

The plain language of the statute is clear and unambiguous, so the court had no choice but to enforce it as written. *Brown, supra.* Here, the trial court

---

[1] MCL 500.4434; MSA 24.14434 states:

There shall be a provision that the policy, the application of the employer and the individual applicants, if any, of the employees insured, shall constitute the entire contract between the parties, and that all statements made by the employer or by the individual employees shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall be used in defense to a claim under the policy, unless it is contained in a written application.

enforced § 4434 of the Insurance Code instead of § 11 of the Credit Insurance Act; consequently, it used the wrong statute but achieved the correct result. When a trial court reaches the correct result for the wrong reason, this Court usually will not reverse the lower court's judgment. *State Mutual Ins Co v Russell*, 185 Mich App 521, 528; 462 NW2d 785 (1990). Therefore, the trial court did not err in determining that the insurance application was not statutorily required to be attached to the certificate of insurance. *Borman, supra,* 198 Mich App 678.

We also find no merit to plaintiff's related argument that defendant's own contract required it to attach a copy of the insurance application to the certificate of insurance and that its failure to do so precluded defendant from using any statements contained in the application against plaintiff. An insurance contract should be read as a whole and meaning should be given to all terms. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). The contractual language is to be given its ordinary and plain meaning, and technical or constrained constructions should be avoided. *Bianchi v Automobile Club of Michigan*, 437 Mich 65, 71, n 1; 467 NW2d 17 (1991). An insurance contract is clear if it fairly admits of but one interpretation. *Farm Bureau Mutual, supra* at 182. If an insurance contract's language is clear, then its construction is a question of law for the court. *Taylor v Blue Cross & Blue Shield of Michigan*, 205 Mich App 644, 649; 517 NW2d 864 (1994).

In the instant case, under the heading "WHAT THE CONTRACT IS AND HOW YOUR STATEMENTS AFFECT IT," the policy provided in relevant part that "[t]he attached

Application for Insurance (if any) by you and any Co-Debtor, the Group Policy, and the Application for the Group Policy are the complete contract of insurance." The ordinary and plain language of the contract indicates that the insurance application may or may not be attached to the certificate of insurance. *Bianchi, supra* at 71, n 1. Thus, plaintiff's argument must fail. Moreover, even assuming that the contract required that the application be attached, the plain language of the contract again fails to support plaintiff's assertion that the contract precluded defendant from using statements in the application against plaintiff. In fact, the contract's plain language, which states "[n]o statement can be used to void the insurance in effect or deny a claim under it, unless that statement is in the Application for Insurance," clearly evidences an intent to rely upon those statements; therefore, plaintiff's argument has no merit.

II

Plaintiff also claims that she has a viable claim under the MCPA because § 4(1)(a) of the MCPA, MCL 445.904(1)(a); MSA 19.418(4)(1)(a), does not preclude her claim in light of the holding in *Attorney General v Diamond Mortgage Co*, 414 Mich 603, 617; 327 NW2d 805 (1982), and given that this Court erred in *Kekel v Allstate Ins Co, supra*. We agree.

A

Section 4(1)(a) of the MCPA provides in relevant part:

This act does not apply to either of the following:

(a) A transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.

In *Diamond Mortgage, supra* at 606-607, the plaintiff sued the defendant under the MCPA for, among other things, usurious mortgage interest rates. The defendants asserted that their real estate license precluded suit under § 4(1)(a) of the MCPA, and our Supreme Court ruled that it did not. *Id.* at 608, 617. The Supreme Court reasoned as follows:

> We agree with the plaintiff that Diamond's real estate broker's license does not exempt it from the Michigan Consumer Protection Act. While the license generally authorizes Diamond to engage in the activities of a real estate broker, *it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan Consumer Protection Act, nor transactions that result from that conduct.* In so concluding, we disagree that the exemption of § 4(1) becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." For this case, we need only decide that a real estate broker's license is not specific authority for all the conduct and transactions of the licensee's business. [*Id.* at 617 (emphasis added).]

Two years later, in *Kekel, supra* at 380-381, the plaintiff appealed after the trial court summarily dismissed the plaintiff's complaint seeking damages from the defendant pursuant to the MCPA over a dispute concerning the plaintiff's no-fault insurance contract. The details of the dispute are not recounted,

however. This Court distinguished *Kekel* from *Diamond Mortgage,* opining that

> [t]he activities of the defendant in *Diamond* which the plaintiffs there were complaining of were not subject to any regulation under the real estate broker's license of the defendant and thus such conduct was not reviewable by the applicable licensing or regulatory authority. That is not true in this case. Allstate Insurance Company is subject to all of the provisions of the Insurance Code of 1956 including the Uniform Trade Practices Act of the Insurance Code. MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.* The insurance industry is under the authority of the State Commissioner of Insurance and subject to the extensive statutory and regulatory scheme, all administered "by a regulatory board or officer acting under statutory authority of this state." In addition, the conduct complained of by the plaintiffs in this case is subject to the regulation and scrutiny of the applicable licensing or regulatory authority. [*Kekel, supra* at 384.]

This explanation, however, ignores the rationale in *Diamond,* which is based on a common-sense reading of the statutes' language that when the Legislature says "authorized," it does not mean "illegal acts." Recognizing the conflict between *Diamond Mortgage* and *Kekel,* we must follow the Supreme Court's holding in *Diamond Mortgage* and apply the rules of statutory construction. *Farrington, supra; Brown, supra.*

Section 4(1)(a) of the MCPA exempts from the MCPA's provisions a transaction or conduct that is "specifically authorized," but it says nothing about a transaction or conduct that is subject to regulation. The language is clear and unambiguous, so it must be enforced as written. *Lorencz, supra; Brown, supra.* Our Supreme Court's interpretation of the MCPA in *Diamond Mortgage* follows the rules of statutory construction; this Court's interpretation in *Kekel* did not.

The rationale in *Diamond Mortgage* must control. The trial court erred, therefore, in not applying the *Diamond Mortgage* Court's interpretation of § 4(1)(a) of the MCPA to the instant case.

This Court is bound to follow decisions of our Supreme Court. Furthermore, this Court is not bound to follow *Kekel* according to Administrative Order No. 1996-4. For example, recently a panel of this Court followed *Diamond Mortgage* rather than *Kekel* because the panel determined that its case was indistinguishable from *Diamond Mortgage*. See *Price v Long Realty, Inc*, 199 Mich App 461, 471; 502 NW2d 337 (1993). In *Price*, this Court based its decision on the fact that the MCPA was a remedial statute, entitled to a liberal construction. The *Price* Court applied the MCPA against the defendant, who was a real estate licensee subject to statutory licensing penalties, because the licensing statute did not "specifically authorize" the conduct that the plaintiff claimed violated the MCPA. *Id.*

On the basis of the foregoing, we believe that *Kekel* erroneously interpreted § 4(1)(a) of the MCPA. *Lorencz, supra; Brown, supra.* This Court should, instead, follow the reasoning from *Diamond Mortgage* as a more correct statutory interpretation that ascertains and gives effect to the Legislature's intent and plain language. *Farrington, supra; Frasier, supra.* Additionally, this Court must follow *Diamond Mortgage* because, as a decision of our Supreme Court, it is binding upon this Court. The trial court's understandable, but incorrect, application of *Kekel* constitutes error. *Smeets v Genesee Co Clerk*, 193 Mich App 628; 484 NW2d 770 (1990). Therefore,

defendant was not entitled to summary disposition as a matter of law. *Borman, supra.*

B

Plaintiff also contends that this Court in its *Kekel* decision improperly interpreted § 4(2)(a) of the MCPA because it ignored the first phrase in the section and instead looked only to the administrative remedies available to the Commissioner of Insurance for proscribed practices by an insurance company. We agree.

Section 4(2)(a) of the MCPA, MCL 445.904(2)(a); MSA 19.418(4)(2)(a), provides:

> (2) Except for the purposes of an action filed by a person under section 11 [MCL 445.911; MSA 19.418(11)], this act does not apply to an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful by:
>
> (a) Chapter 20 of the insurance code of 1956, Act No. 218 of the Public Acts of 1956, as amended, being sections 500.2001 to 500.2093 of the Michigan Compiled Laws.

Section 11 of the MCPA, among other provisions, permits an individual to file an action under the act, allows class-action suits, permits declaratory judgments, and allows recovery of attorney fees. MCL 445.911; MSA 19.418(11). Chapter 20 of the Insurance Code is the Uniform Trade Practices Act (UTPA), which regulates the trade practices of Michigan insurance companies under the authority of the state Commissioner of Insurance. MCL 500.2001 - 500.2093; MSA 24.12001 - 24.12093.

In *Kekel, supra* at 385, this Court analyzed the application of § 4(2)(a) of the MCPA to the defendant insurance company in light of what this Court characterized as the UTPA's nonexclusive remedy provisions

found in §§ 2049 and 2050 of the UTPA. This Court said that

> the Michigan Consumer Protection Act specifically exempts transactions between an insurance company and its insured which are covered under the Uniform Trade Practices Act of the Insurance Code. In this regard, we must again look to the additional exemption provisions of the Michigan Consumer Protection Act and specifically § 4(2)(a) wherein the Legislature has specifically provided that the Michigan Consumer Protection Act does not apply to any unfair, unconscionable, or deceptive method, act or practice which is made unlawful by the Uniform Trade Practices Act of the Insurance Code. [*Kekel, supra* at 385.]

Next, this Court reviewed the UTPA's provisions that set forth the acts or practices made unlawful by the act and the powers of the Commissioner of Insurance to remedy those acts or practices. *Id.* at 385-386, citing MCL 500.2043; MSA 24.12043. The Court concluded that

> [t]he actions complained of by the plaintiffs could arguably fit factually into a number of the itemized acts or practices which are made unlawful. There can be no argument, however, that the acts complained of by the plaintiffs are covered by the provisions of § 2043. Thus, defendant's conduct as described by plaintiffs would be subject to the Insurance Code of 1956 meeting the criteria of the exemption set out in § 4(2)(a) of the Michigan Consumer Protection Act. [*Kekel, supra* at 386-387.]

Plaintiff points out that in *Kekel* this Court seemingly ignored the introductory phrase in § 4(2) of the MCPA, which provides an exception for those actions filed by persons under § 11 of the MCPA. Plaintiff asserts that although the exception in § 11 is intended to allow persons to file causes of action against insur-

ance companies pursuant to the MCPA for deceptive practices, this Court's statutory analysis in *Kekel* rendered § 4(2) meaningless because its interpretation of § 4(1)(a) had already exempted the entire insurance industry from the MCPA.

The Legislature plainly stated in § 4(2) of the MCPA that it intended to exempt actions filed under § 11 from its general rule that the MCPA did not apply to acts or practices made unlawful by the eight other statutes cited. *Frasier, supra* at 744. One of those eight statutes cited in § 4(2) is the UTPA. See MCL 445.904(2)(a); MSA 19.418(4)(2)(a), citing MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.* Allowing a *person* to pursue a cause of action against an insurance company under § 11 of the MCPA would not conflict with the plain language in §§ 2049 and 2050 of the UTPA, which provide that the UTPA's remedies are not exclusive. MCL 500.2049 - 500.2050; MSA 24.12049 - 24.12050. If the UTPA provides on its face that its remedies are not exclusive, plaintiff's interpretation is correct because it avoids conflict between the MCPA and the UTPA. *House Speaker v State Administrative Bd*, 441 Mich 547, 568-569; 495 NW2d 539 (1993) (ruling that if two statutes lend themselves to a construction that avoids conflict, then that construction should control). Moreover, this interpretation does not render any part of § 4 of the MCPA nugatory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992) (ruling that a court should avoid construing a statute in a way that renders it, or any part of it, nugatory).

Clearly, § 11 of the MCPA allows private actions to be brought under § 4(2) of the MCPA. Thus, the MCPA allows private parties to proceed where a state-

initiated prosecution would be precluded under MCL 445.904(2)(a)-(h); MSA 19.418(4)(2)(a)-(h). Moreover, we believe this conclusion is logical because allowing a suit to be initiated by the government where the industry is already regulated by governmental entities would be redundant. A governmental agency could bring action against a regulated industry so there would be no need for intervention by the Attorney General. In those areas regulated by governmental agencies, however, claims by individuals for money damages provide a form of relief that cannot be achieved by the Attorney General, who could only seek injunctive relief under § 5 of the MCPA, MCL 445.905; MSA 19.418(5), unless bringing the action on behalf of a class of individuals under § 10 of the MCPA, MCL 445.910; MSA 19.418(10). Because "the MCPA is a remedial statute designed to prohibit unfair practices in trade or commerce, it must be liberally construed to achieve its intended goals." *Price, supra* at 471. For similar reasons, we also find that *Bell v League Life Ins Co*, 149 Mich App 481, 485; 387 NW2d 154 (1986), must be disregarded. *Bell* relies on *Kekel* for its holding that the plaintiff could not state a claim under the MCPA. See also *Dix v American Bankers Life Assurance Co of Florida*, 429 Mich 410, 414-415; 415 NW2d 206 (1987), where our Supreme Court concluded that the plaintiff insurers not only stated a cause of action against the insurance company under the MCPA but also could initiate a class action against the insurer under the MCPA, and *Lawson v American Security Ins Co*, unpublished opinion of the United States District Court (File No. 88-CV-10 280-BC) (ED Mich, 1989), which held that *Kekel* was inconsistent with *Diamond Mortgage*.

The foregoing analysis leads us to conclude that § 4(2) of the MCPA must be interpreted to permit an individual's cause of action under § 11 of the MCPA against an insurance company because this interpretation of the MCPA gives meaning to § 4(2) with respect to insurance companies and allows an harmonious construction of the MCPA and the UTPA.

In summary, we find that this Court's interpretation of §§ 4(1)(a) and 4(2) of the MCPA in *Kekel, supra,* fails to comport with the clear legislative intent of the MCPA or the Supreme Court's decision in *Diamond Mortgage* and thus must be rejected. We also find that this Court is not bound by the decision in *Kekel* pursuant to Administrative Order No. 1996-4.

Reversed and remanded for proceedings consistent with this opinion.

Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

GRIBBS, P.J., concurred.

T. G. KAVANAGH, J., did not participate.