*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEE STARNES,

        Plaintiff-Appellant,

v

SCHOOLCRAFT MEMORIAL HOSPITAL,
JOHN GALEY, M.D., and BARBARA FIK,

        Defendants-Appellees.

UNPUBLISHED
April 11, 2019

No. 341195
Schoolcraft Circuit Court
LC No. 2015-004947-NH

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Plaintiff, Lee Starnes, appeals an opinion and order granting defendants, Schoolcraft Memorial Hospital, John Galey, M.D., and Barbara Fik, summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTS

In January 2012, Starnes had an MRI performed on his right knee. On October 29, 2013, Starnes met with Dr. Galey, a board-certified orthopedic surgeon employed with Schoolcraft Memorial Hospital, for a pre-operation examination. Dr. Galey diagnosed Starnes with arthritis and a medial meniscus tear in the right knee. Starnes also informed Dr. Galey that the pain in his left knee was worse than in his right knee. Upon physical examination, Dr. Galey believed that Starnes had a torn meniscus in his left knee as well, and he decided to perform an arthroscopy on the left knee instead of the right knee.

On the same day as Dr. Galey's examination, Starnes signed a consent form for a "knee arthroscopy with chondroplasty meniscectomy and/or lateral release as indicated by arthroscopic findings." The consent form included an "(R)" and "(L)" for designating on which knee to perform the operation. Defendant Fik, a nurse at the hospital, circled the "(R)" on Starnes's form, but then she crossed it out and wrote her initials next to the marking. She then circled the "(L)." She testified at her deposition that these changes were made before she gave the form to Starnes to sign, and the only reason it had been changed was because she filled out the form before Dr. Galey examined Starnes and decided to perform the arthroscopy on the left knee

-1-

rather than the right knee. On October 29, 2013, Nurse Fik also completed, and Dr. Galey signed, three pre-surgery forms, all of which indicated that a "left knee arthroscopy" was to be performed.

On November 5, 2013, the day before the scheduled arthroscopic surgery, Nurse Roxanne Paquette conducted an ambulatory care initial interview over the phone with Starnes. In her affidavit, Nurse Paquette attested that Starnes consented to a left knee arthroscopy. The electronic medical record created based on their conversation indicates that the procedure to be performed was a "left knee arthroscopy" and the reason for the procedure was a "left medial meniscus tear."

Denise McMullen, a pre-operation and surgical nurse employed at Schoolcraft Memorial Hospital, attested in her affidavit that she confirmed with Starnes that the October 29, 2013 consent form, which identified that the procedure would be a left knee arthroscopy, was correct. Nurse McMullen stated that before the procedure, Starnes verified the proper surgical site on his left knee, and he also gave verbal verification that the procedure was to be performed on his left knee. She also stated that other "nurses independently verified with [Starnes] that the proper site of the arthroscopy was his left knee." Nurse McMullen stated that "[Starnes's] left knee was also propped up, immobilized, and shaved" before the procedure. "Dr. Galey also marked the left knee approximately 20 minutes before [Starnes] was taken to the operating room." Thomas DeBerardino, M.D., a medical expert for Starnes, stated that, due to the aforementioned procedures, patients normally know immediately if the wrong knee is about to be operated on. He stated that there would have been a violation of the standard of care if the safeguards like the ones above had not been completed before surgery.

On November 6, 2013, Dr. Galey performed an arthroscopy on Starnes's left knee. Dr. DeBerardino indicated that, while there is debate amongst physicians about whether an MRI is necessary before probing a knee, Dr. Galey's choice to probe Starnes's knee without first performing an MRI was not a breach of the standard of care.

Nurse McMullen attested that "after the left knee arthroscopy, [Starnes] verbalized a small ache at the surgical site [on the left knee], and an understanding of his discharge instructions. Neither he nor his wife made any complaint before or at the time of discharge." The day after the surgery, a nurse made a follow-up phone call to Starnes, but he did not mention that he thought that Dr. Galey had operated on the wrong knee. Subsequently, Starnes visited Dr. Marc Anderson, who confirmed the previous diagnoses Dr. Galey had made about Starnes's left knee—that there was an issue with the meniscus and that the knee was arthritic. Starnes complained to Dr. Anderson that he had no pain in his left knee before the arthroscopy. Dr. Anderson performed another arthroscopy of Starnes's left knee approximately six months after Dr. Galey's operation.

## II. ANALYSIS

Starnes argues that the trial court erred in granting defendants' motion for summary disposition. We disagree.

This Court reviews de novo a trial court's decision under MCR 2.116(C)(10) in determining whether the moving party is entitled to judgment as a matter of law. *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington*, 298 Mich App at 270. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Id*. at 270-271 (quotation marks and citation omitted).

The plaintiff then bears the burden of demonstrating that a genuine issue of material fact existed with respect to at least one of the following: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and injury. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003). In this case, there is no dispute that the standard of care requires Dr. Galey perform surgery on the correct body part and obtain consent to do so. Instead, the issue here is limited to whether defendants breached this standard of care.

Defendants produced considerable evidence demonstrating that Starnes asked for a probe of his left knee because that knee was more bothersome than his right knee. Further, Starnes consented to a probe of the left knee at a pre-procedure consultation with Nurse Fik, then on the phone with Nurse Paquette the day before the procedure occurred, and then numerous times while in the hospital before Dr. Galey performed the arthroscopy. Dr. DeBerardino, when deposed, and in direct contradiction to his affidavit of merit, declined to opine that defendants breached their standard of care in operating on the left knee, confirmed that numerous opportunities to consent or not consent were provided to Starnes regarding his left knee, stated that he had no evidence to suggest that defendants altered Starnes's medical records, and stated that he did not have evidence to demonstrate that there was a conspiracy to conceal Dr. Galey's supposed mistake. Given defendant's exhaustive documentation and Starnes's failure to counter it, the record does not leave open an issue on which reasonable minds could differ. *Cuddington*, 298 Mich App at 270-271.

Instead of pointing to genuine factual disputes about whether healthcare professionals obtained his consent to probe his left knee, Starnes provides this Court with speculative allegations that Dr. Galey and Nurse Fik, or someone within Schoolcraft Memorial Hospital, changed his medical records to cover up the fact that they performed a procedure on the wrong knee. To support his allegation of a cover-up, Starnes states that Nurse Fik's handwritten correction to a surgical consent form evidences the existence of a conspiracy to conceal the healthcare professionals' failure to obtain appropriate consent from him. However, this assertion, without corroborating evidence, is speculative and does not establish a question of fact as to whether defendants failed to obtain consent to operate on Starnes's left knee.

Starnes also relies upon Dr. DeBerardino's affidavit of merit, in which Dr. DeBerardino states that Starnes's medical records suggest that he did not consent to an arthroscopy of his left knee, that Dr. Galey performed a probe on the wrong knee, and that Starnes's medical records were altered. First, Starnes misrepresents what is contained in the affidavit of merit; Dr. DeBerardino only stated that it *appeared* that the medical records were changed, but he offered no theory as to whether this change was to conceal a mistake after the probe was allegedly performed on the wrong knee. In his affidavit of merit, Dr. DeBerardino stated:

> It appears to me that the medical records of Lee Starnes have been inappropriately altered. In my experience it is unheard of and extremely inappropriate to cross out and replace the surgery site on a surgical consent form without having the patient specifically sign/initial the change. I also am aware of no reason why a handwritten amendment would be made to an electronic medical record other than to be able to make the amendment without an electronic time-stamped record of when the change was made.

Even if Dr. DeBerardino's assertion is accurate, the hand-written alteration of a medical record does not demonstrate that defendants failed to obtain Starnes's consent. Dr. DeBerardino does not offer any evidence independent of the form's alteration, and any theory from Dr. DeBerardino as to why the change to the form was made is merely speculative. Starnes's speculation about defendants' motivation to change his medical records and Dr. DeBerardino's statement in his affidavit of merit do not create a genuine issue of material fact with regard to breach of the standard of care. *Smith v Globe Life Ins Co*, 223 Mich App 264, 273; 565 NW2d 877 (1997), rev'd on other grounds 460 Mich 446 (1999) (holding that speculation and conjecture are insufficient to create a genuine issue of material fact).

Moreover, Starnes may not rely on Dr. DeBerardino's affidavit of merit to establish the existence of a genuine issue of material fact as to the breach of the standard of care. In his deposition testimony, Dr. DeBerardino explicitly stated that he had no evidence to demonstrate that the medical records were improperly altered to conceal a mistake. Moreover, after being asked to review medical records, Dr. DeBerardino affirmed that the medical records indicated that defendants asked for Starnes's consent before performing the procedure on his left knee, and that Starnes gave his consent for the procedure on his left knee. Although Dr. DeBerardino may have made statements at his deposition which were contrary to his affidavit of merit, in *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479; 633 NW2d 440 (2001), this Court held that parties may not contrive factual issues by relying on an affidavit of merit when a witness gives damaging testimony in a deposition. *Dykes*, 246 Mich App at 479-482. A party may not contrive factual issues "by relying on an affidavit when unfavorable deposition testimony shows that the assertion in the affidavit is unfounded." *Id*. at 481. As the trial court determined, it is Dr. DeBerardino's sworn deposition testimony that controls, not his affidavit.

Finally, Starnes argues that the trial court erred in granting defendants' motion for summary disposition because, at the very least, it is for the jury to determine the accuracy of the medical records. Thus, he claims, the trial court erred because the evidence it used to make its decision, specifically Dr. DeBerardino's deposition testimony, meant Dr. DeBerardino accepted the accuracy and validity of the medical records. However, Dr. DeBerardino was directly asked whether the records were improperly altered, and he stated that he had no evidence to support

that assertion. In the course of this case, Starnes offered no evidence that the medical records were altered after the procedure. With respect to the most suspicious record, which had crossed out the designation for the right knee and circled the designation for the left knee, Nurse Fik testified that she altered the consent form before the procedure and before Starnes signed it to reflect his desire for a probe of his left knee. Starnes's suspicions of post-surgery alterations to the record appear to be based purely on speculation and conjecture. The trial court did not err when it concluded that there were no genuine issues of material fact and summary disposition was proper under MCR 2.116(C)(10).

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron